Case 4:25-cv-04525   Document 11   Filed on 01/03/26 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
January 03, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FARBOD REZAIE, § | |
| § | |
| Petitioner, § | |
| v. § | CIVIL ACTION NO. H-25-4525 |
| § | |
| KRISTI NOEM, Secretary of U.S. § | |
| Department of Homeland Security, *et al.*, § | |
| § | |
| Respondents. § | |

**ORDER**

The petitioner, Farbod Rezaie, is a detainee in the custody of United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") officials at the Houston Contract Detention Facility. (Docket Entry No. 1). Rezaie is a citizen of Iran who has lived in the United States since 1995.[1] (*Id.* ¶¶ 10, 11). In April 2009, an Immigration Judge issued an order removing him to Iran. (*Id.* ¶ 14). The government could not effect Rezaie's removal, so it released him from custody in November 2009. (*Id.* ¶ 15). Although Rezaie committed several crimes before his 2009 removal proceedings, the government does not identify any wrongdoing since his release in 2009. (*Id.* ¶¶ 13, 21; Docket Entry No. 8 at 3–4).

In June 2025, ICE took Rezaie into custody. (*Id.* ¶17). The government sought to remove him to Iran, but it has not yet obtained travel documents for him. (*Id.* ¶¶ 23, 24). Through counsel, Rezaie filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his continued detention pending his removal under the 2009 final removal order. (*Id.*). He alleges violations of the Immigration and Nationality Act, violations of his due process rights, and

---

[1] Although the respondents assert that Rezaie is also a citizen of Sweden, they later admit that Rezaie renounced his Swedish citizenship in August 2009. (Docket Entry No. 8 at 3, 5).

violation of regulations and the *Accardi* doctrine. (*Id.* ¶ 44–59). He requests that the court issue a writ of habeas corpus ordering the respondents to release him. (*Id.* ¶ 60).

This case presents one of the many immigration-detention issues recurring in the federal courts under the current Administration: whether the government may re-detain noncitizens who are subject to a final removal order but have been previously released from custody, for the government's failure to timely deport them. The dispositive questions are whether there is a "significant likelihood that the noncitizen will be removed in the reasonably foreseeable future" and whether "special circumstances justify continued detention." *Yee S. v. Bondi*, __ F. Supp. 3d ____, 2025 WL 2879479, at *3 (D. Minn. Oct. 9, 2025) (citing 8 C.F.R. § 241.13(g)). After an individual has been released under Section 241.13, the government may revoke that release for a violation of the conditions of release or changed circumstances. *Id.* at *4 (citing 8 C.F.R. § 241.13(i)(2)). When, as here, the government has detained a noncitizen who it previously released from custody despite a final removal order, the "regulations place the burden on ICE to establish that 'changed circumstances' justified the revocation of release." *Id.*; *accord Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 & n.2 (D. Mass. 2025); *Escalante v. Noem*, No. 9:25-CV-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Roble v. Bondi*, ___ F. Supp. 3d ___, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025).[2]

---

[2] Another court in this district has ruled that the petitioner must establish a prima facie case under the relevant regulations. *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025). This court respectfully disagrees, for two reasons. First, the regulation places the burden on the government. The *Abuelhawa* court relied on the fact that the scope of the regulation makes it active only when a noncitizen has provided good reason to believe there is no significant likelihood of removal. *See id.* (citing 8 C.F.R. § 241.13(a)). But once a noncitizen is released, the regulations permit revocation of that release if "the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The government must make the revocation determination, *id.*, establish a basis for that determination, *see id.* § 241.13(i)(3), and defend that determination in subsequent review, *id.* The revocation procedures place the burden on the government. Second, the "default rule" is that the party seeking "to change the present state of affairs" must "bear the risk of failure of proof or persuasion." *Roble*, 2025 WL 2443453, at *4 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). In this case, the status quo is the petitioner's "release on terms of

The case law has identified when in the removal timeline the likelihood of deportation is too uncertain to justify continued detention for noncitizens in Rezaie's position. The government "fails to meet its burden where it provides only conclusory statements as to the likelihood of removal." *Abuelhawa*, 2025 WL 2937692, at *9. If "[t]ravel documents are still 'pending,'" continued detention is not justified. *Balouch v. Bondi*, No. 9:25-CV-216-MJT, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025); *see, e.g.*, *Abuelhawa*, 2025 WL 2937692, at *9–10 (granting relief because the government failed to show it had secured or was likely to secure necessary travel documents); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (similar); *Roble*, 2025 WL 2443453, at *5 (similar); *Nguyen*, 788 F. Supp. 3d at 152 (similar). By contrast, removal is significantly likely if the government can show that travel documents have been approved, *see, e.g.*, *Piao v. Lyons*, No. 1:25-CV-1725, 2025 WL 3046783, at *3 (E.D. Va. Oct. 31, 2025); *Tawfik v. Garland*, No. CV H-24-2823, 2024 WL 4534747, at *4 (S.D. Tex. Oct. 21, 2024), or that "that the receiving nations ha[ve] accepted similarly situated detainees in the past," *Abuelhawa*, 2025 WL 2937692, at *9; *see, e.g.*, *Salim v. Sessions*, No. H-18-2287, 2019 WL 13218806, at *5 (S.D. Tex. Sept. 4, 2019) (citing government declaration of removal "in the past and in similar cases"); *Apau v. Ashcroft*, No. 3:02-CV-2652-D, 2003 WL 21801154, at *3 (N.D. Tex. June 17, 2003) (similar); *Nagib v. Gonzales*, No. 3:06-CV-0294-G, 2006 WL 1499682, at *2 (N.D. Tex. May 31, 2006) (similar); *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *14 (W.D. La. Oct. 15, 2019) (similar), *report and recommendation adopted*, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019).

---

supervision." *Abuelhawa*, 2025 WL 2937692, at *7. The government is seeking to change the status quo "by re-detaining" the petitioner. *Roble*, 2025 WL 2443453, at *4. As a result, the government must demonstrate why the law permits the petitioner's detention.

In this case, the government failed to show a "significant likelihood that" Rezaie "will be removed in the reasonably foreseeable future" or that "special circumstances justify continued detention."[3] *Yee S.*, 2025 WL 2879479, at *3. The government's justification is that it is "preparing" his Iranian travel documents and that Iran "has not indicated that it would refuse to issue [Rezaie] travel documents." (Docket Entry No. 8 at 5, 9). These statements are far from sufficient to satisfy the government's burden of demonstrating that there is a "significant likelihood of removal" to Iran. *See Balouch*, 2025 WL 2871914, at *3 (granting a writ of habeas corpus where travel documents to Iran were still "pending" and the respondents had not shown that the petitioner was scheduled to be on the upcoming removal flight that the respondents had identified). The government's generalized assertion that Rezaie "has not cooperated" is not a sufficient basis to detain him either. (Docket Entry No. 8 at 9; Docket Entry No. 8-1 ¶ 20); *see Ghasedi v. Wamsley*, No. 2:25-cv-01984, 2025 WL 3699705, at *6 (W.D. Wash. Dec. 1, 2025) (concluding that the petitioner's alleged noncooperation, even if true, did not doom his *Zadvayas* claim where the government's assertion of noncooperation lacked necessary details); *see also Glushchenko v. U.S. Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 709 (W.D. Tex. 2021) (holding that "the government must demonstrate a lack of cooperation by clear and convincing evidence to justify extended detention"). The government also provides no evidence that the handful of individuals it has removed to Iran are "similarly situated" to Rezaie. (*See* Docket Entry No. 8-1 ¶ 17).

In addition, although the government asserts that "Sweden has not indicated that it would refuse to reinstate [Rezaie's] Swedish citizenship and refuse to issue the travel documents," the government admits that it already tried to get travel documents from Sweden in October 2025 and was rebuffed because Rezaie was no longer a citizen. (Docket Entry No. 8 at 9; Docket Entry No.

---

[3] The federal respondents filed the motion to dismiss. (Docket Entry No. 8). Frink joined that motion to dismiss. (Docket Entry No. 9).

8-1 ¶ 19). The government's speculation that Rezaie *might* reapply for citizenship and that Sweden *might* accept him is once again insufficient to show that there is a "significant likelihood" of removal that would justify his continued detention at this time.[4]  *See Abuelhawa*, 2025 WL 2937692, at *9 ("[T]he government fails to meet its burden where it provides only conclusory statements as to the likelihood of removal.").

After determining that the government has improperly re-detained a noncitizen subject to removal, courts order the noncitizen's "release from custody as a remedy for ICE's illegal re-detention."  *Roble*, 2025 WL 2443453, at *5 (collecting cases).  Courts have declined to enter additional injunctive relief "restricting ICE's ability to re-detain [a petitioner] at some point in the future," because the chance that ICE will again illegally re-detain a petitioner is too speculative to justify such relief.  *See id.*  This court follows their lead and orders the respondents to promptly release Rezaie from detention, no later than January 12, 2026.[5]

In conclusion, Rezaie's petition, (Docket Entry No. 1), is granted in part.  The respondents must release Rezaie from detention no later than January 12, 2026, and reinstate his previous Order of Supervision.  "For avoidance of doubt, while [Rezaie] remains on supervised release, nothing prevents [r]espondents from re-detaining and removing him if proper travel documents are secured and there is a significant likelihood of his removal to" Iran, Sweden, or an alternative third country in accordance with relevant regulatory requirements.  *Id.*  The court also advises Rezaie that he must cooperate with the government when required to do so.  But until his proper travel documents are secured and there is a significant likelihood of his removal to a country after the proper

---

[4] The government largely does not argue that Rezaie's criminal history justifies his detention. (*See* Docket Entry No. 8 at 10) (making a passing assertion that Rezaie's criminal history makes him a danger to the community).  But the government does not identify criminal activity after Rezaie's release in 2009.  His criminal history is not a changed circumstance that justifies release revocation.

[5] The court denies Rezaie's request for attorney's fees because "the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023).

5

evaluation of any credible fear claim that has been made, there is no legal basis to continue to detain Rezaie.  He must be released.

SIGNED on January 3, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge